**ORIGINAL**



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 29 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JAMES BARA )<br><br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>GOOGLE, INC., )<br>    )<br>    Defendant. ) | Civil Action<br>File No. 1:09-CV-3002<br><br>**JURY TRIAL DEMANDED** CAM |

## COMPLAINT FOR DAMAGES

COME NOW, **JAMES BARA**, Plaintiff in the above-styled civil action and hereby files and serves this his Complaint for Damages pursuant to Title VII of the Civil Rights Acts of 1964 against Google, Inc., and respectfully shows this Honorable Court as follows:

## NATURE OF THE ACTION

1.

Plaintiffs bring this Complaint for Damages as a result of a pattern of gender discrimination, religious discrimination, and resulting retaliation by the Defendant and its agents toward Plaintiff.

## PARTIES, JURISDICTION, AND VENUE

2.

Paragraph 1 of this Complaint is adopted and incorporated herein by reference.

3.

The claims of this lawsuit arise under Title VII of the Civil Rights Act of 1964. This Court has jurisdiction over these federal law claims.

4.

Plaintiff James Bara is, and at all times relevant to this action was, a resident of the State of Georgia.

5.

Defendant Google, Inc. (hereinafter referred to as "Google") is a California corporation duly authorized to do business in the State of Georgia, with its principal place of business in California. Defendant Google, Inc. is an internet search, e-mail, online mapping, office productivity, social networking, and video sharing service, which has also developed an open source web browser and a mobile operating system. At all pertinent times, Google has transacted business in the State of Georgia. Defendant Google, Inc. is subject to the jurisdiction of this Court. Venue is proper in this Court. Defendant Google may be served by

delivering a copy of the Summons and Complaint to its registered agent for service of process Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

## CONDITIONS PRECEDENT

6.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 5 of this Complaint.

7.

All conditions precedent to the bringing of this action and Plaintiff's right to relief sought herein have occurred, have been performed, or have been excused.

8.

This action has been timely commenced within any applicable period of limitations and repose.

9.

Pursuant to Title VII of the Civil Rights Act, Plaintiff James Bara filed a formal charge with the EEOC on July 27, 2009—within 180 days of the discriminatory action of the Defendant. (Attached hereto as Exhibit "A" is a true and correct copy of James Bara's formal charge filed with the EEOC on July 27, 2009.)

10.

On August 8, 2009, Plaintiff James Bara received a Dismissal and Notice of Suit Rights from the EEOC. (Attached hereto as Exhibit "B" is a true and correct copy of the EEOC's Dismissal and Notice of Suit Rights, dated July 31, 2009.)

11.

Plaintiff is a male who is protected under Title VII of the Civil Rights Act.

12.

Plaintiff is a practicing Wiccan; the Wicca religion is recognized and protected under Title VII of the Civil Rights Act.

13.

Defendant Employer is a private employer with fifteen (15) or more employees, and is subject to the provisions of Title VII of the Civil Rights Act.

## STATEMENT OF FACTS

### A. PRE-DISCRIMINATION EMPLOYMENT PROGRESS, PROMOTIONS, AND BONUSES

14.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 13 of this Complaint.

15.

Plaintiff James Bara was initially hired as a contractor for Google on February 4, 2009. As a contractor, Plaintiff worked for WorkForce Logic, a Google contracting company. As a Data Center Technician Assistant, Plaintiff helped to build critical clusters and components of the Google Atlanta data center.

16.

After working as contractor for six (6) months, Plaintiff was converted to a Google employee on October 23, 2006. He began employment as a DTA/Operations Tech 0.

17.

Throughout his time with Google, Plaintiff received many promotions and praises from his peers.

18.

Google employees are evaluated on a quarterly basis through Google's Peer Evaluation Review Forum (PERF). Beginning with his very first PERF in December of 2006, Plaintiff not only received praises from his manager, including constant quarterly ratings of "exceeds expectations" or "meets expectations", but Plaintiff also received high praise from his peers in unsolicited evaluations.

19.

On August 30, 2007, after less than one (1) year as a Google employee, Plaintiff received his first promotion—that of Associate Technical Program Manager. Along with the salary increase came increased job responsibilities.

20.

Again, Plaintiff breezed through his PERF reviews for the third quarter of 2007 (Q3 2007). He received a manager rating of "exceeds expectations," as well as receiving high praise from his peers in the unsolicited evaluations that were part of the PERF review.

21.

In fact, Plaintiff was so proficient at his new position and excelled at performing his new responsibilities that he was again promoted on December 1, 2007 to Technical Program Manger II. Again he received a salary increase and additional job responsibilities.

22.

Plaintiff was rewarded for his performance in 2007 through the annual company bonus program. He received a bonus for outstanding performance on March 1, 2008.

23.

Plaintiff's performance reviews for 2008 matched those glowing reviews he received during his first year and half of employment. Based on his reviews, Plaintiff was again promoted on August 22, 2008 at which time he was promoted to Instructional Designer II.

24.

Subsequent to this fourth and final promotion, Plaintiff received high praise and ratings from his manager and his peers during the third and fourth quarterly PERFs.

25.

Again on December 1, 2008, Plaintiff received a pay raise for outstanding performance in 2008.

26.

Plaintiff was further rewarded for his fine performance with the Defendant on March 1, 2009 when he received the annual company bonus for outstanding performance in 2008.

27.

Throughout Plaintiff's almost three (3) year tenure under Defendant's employ, he received four (4) separate promotions, numerous increases in pay, and

high praise and ratings from his manager and peers alike. Of note, Plaintiff's manager and direct supervisor, Pam Sohn, signed off on each of these.

28.

All that changed when Plaintiff began to endure discrimination at the behest of Sohn. More importantly, it worsened when Plaintiff began to voice his concerns to Human Resources.

## B.    PLAINTIFF'S CONTACT WITH GOOGLE HUMAN RESOURCES

29.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 28 of this Complaint.

30.

Sometime in July of 2008, a transgendered female, Asheligh Rentz, signed on to join the Google Atlanta team. For weeks prior to her doing so, Sohn made numerous inappropriate attempts at humor directed at Rentz's sexual preferences.

31.

Plaintiff complained to Sohn on more than one occasion that he found the comments offensive and wholly inappropriate. The comments only ceased when Rentz finally came to work.

- 8 -

32.

After confronting Ms. Sohn, Plaintiff noticed that Ms. Sohn began to lay out special rules which were only applicable to the Plaintiff which caused him intentional hardship. Ms. Sohn further began using a derogatory tone toward the Plaintiff, and demonstrated a demeaning attitude and hostile actions which made the Plaintiff feel uncomfortable for confronting Ms. Sohn about the sexual jokes.

33.

On December 1, 2008, Plaintiff reached out to Maggie Johnson, the Learning and Development Director in Google's Atlanta office. Plaintiff indicated that he believed Ms. Sohn was treating him differently and making him feel uncomfortable ever since Plaintiff confronted Ms. Sohn about the sexual jokes.

34.

In response, Ms. Johnson recommended that Plaintiff write down the issues he was having with Ms. Sohn and schedule a one-on-one meeting with Ms. Sohn. Plaintiff complied with Ms. Johnson's suggestion.

35.

Even after speaking with Ms. Sohn, Plaintiff continued to feel uncomfortable around Ms. Sohn and continued to feel as though Ms. Sohn was

treating him negatively. Plaintiff felt so uncomfortable that he no longer wished to share an office with Ms. Sohn and so moved into the general seating area to try to put some breathing room between the two.

36.

Plaintiff began noticing that he was being treated differently from the women employees in the office. Plaintiff, for instance, had set working hours in which he was required to be in the office; female employees did not. Plaintiff and other male employees were not allowed to work from home, whereas female employees were allowed to do so.

37.

The terms, conditions, and privileges of Plaintiff's employment were drastically different than other employees in the office. Plaintiff was subjected to increased participation at the data center and a requirement of written reports following visits to the data center.

38.

Other Google employees were not subject to the same limitations in the terms, conditions, or privileges of employment with the Defendant.

39.

Although Plaintiff had previously conducted training sessions across the globe, after filing his complaint with Human Resources, such opportunities were withdrawn from Plaintiff's employment responsibilities.

40.

Plaintiff met with Sohn in a one-on-one meeting on December 17, 2008 in an attempt to discuss the issues Plaintiff was having with Sohn. Plaintiff also sought feedback on performance, expectations for the upcoming year, and areas where both Plaintiff and Sohn could improve in order to alleviate the Plaintiffs feelings of discomfort.

41.

Things did not improve, however. Plaintiff continued to be required to work from the office; continued to have zero opportunity to conduct off-site training sessions; and continued to have other terms and conditions of his employment be altered in a negative fashion. On February 16, 2009, the hostility toward Plaintiff increased, this time Sohn referring to a one-on-one meeting with him as a "witch trial" and stating that Plaintiff was acting as though Ms. Sohn was "persecuting"

him. Both Sohn and Plaintiff understood Sohn's comments to refer in part, to her knowledge that Plaintiff was a practicing Wiccan.

42.

In fact, Sohn had previously referred to her and Plaintiff's workspace during the holiday season as reflecting their "Jew-Witch" religious practices – Sohn is Jewish, and as such, neither had traditional holiday ornamentation in their workspace. When Plaintiff explained to Sohn that the term was offensive, Sohn stated, "come on; it's catchy!"

43.

That day, Plaintiff filed a complaint with Human Resources representative Paul Higson, a representative in the Kirkland, Washington Google office.

44.

Again on or about March 8, 2009, after the DC Safety team completed a long project, Ms. Sohn began singing "ding dong the witch is dead, which old witch, the wicked witch," to the obvious discomfort and disgust of the Plaintiff.

45.

After continuing to have issues with Ms. Sohn, on March 16, 2009, Plaintiff filed yet another complaint with Maggie Johnson and Susan Wilson in Google

Human Resources. In his complaint, Plaintiff's allegations against Ms. Sohn included:

    a.    derogatory tone and language;

    b.    intentional and deliberate denial of career growth and opportunity;

    c.    accusations of lying about project work

    d.    refusing to reply to emails;

    e.    refusal to take questions.

46.

Shortly thereafter, on May 1, 2009, a Performance Improvement Plan (PIP) was initiated by Pam Sohn as a result of what Ms. Sohn referred to as "consistent decline" in Plaintiff's performance, an obvious, transparent, and classic act of retaliation, as well as a direct form of discrimination.

47.

Believing such PIP was in retaliation for Plaintiff complaining to Human Resources about Ms. Sohn's behavior, Plaintiff again reached out to Susan Wilson. In addition to discussing the retaliatory nature of the PIP, Plaintiff requested a list of the legal obligations of Google, as well as the creation of a "manager transition plan," which would allow Plaintiff to transfer to the direction and control of a

different manger, and out of the control of Ms. Sohn. Plaintiff believed such option would resolve the issues with he was facing at Google.

48.

A meeting was held between Plaintiff and Ms. Wilson on June 25, 2009 in which Plaintiff formalized his request for a manager transition plan. Again Plaintiff inquired into Google's legal obligations to Plaintiff in response to Plaintiff's belief that the PIP was in retaliation to Plaintiff's complaints to Human Resources.

49.

A meeting was scheduled for June 30, 2009 to address Plaintiff's PIP with Ms. Sohn and Ms. Wilson. Immediately following the meeting, Plaintiff emailed Ms. Sohn and Ms. Wilson outlining work project status, completion dates, team members involved, as well as the details of each project. No response was forthcoming from either Ms. Sohn or Ms. Wilson.

50.

Although the PIP was to be completed in 45 days, due to inaction by Ms. Sohn and Ms. Wilson, the PIP was extended to July 1, 2009, this despite the fact that Plaintiff had improved in all of the areas addressed by the PIP.

51.

On July 8, 2009, yet another meeting was held with Google Human Resources outlining Plaintiff's grievances. Plaintiff indicated he was receiving differential treatment from the women on the Google Atlanta team; the hostile environment in which he found himself; and a perceived conflict of interest with Susan Wilson, due to the fact that Ms. Wilson shared an office with Ms. Sohn.

52.

As a follow-up to the meeting, Plaintiff filed final complaint with Google on July 10, 2009. Therein, Plaintiff indicated the following grievances:

     f.     Inappropriate sexual comments by Ms. Sohn;

     g.     Offensive and continuous comments regarding the Wiccan religion;

     h.     A hostile working environment;

     i.     Differential treatment toward Plaintiff as compared to the women in the office;

     j.     Imposition of a PIP in retaliation for complaints to Google Human Resources; and

     k.     Intentional interference with Plaintiff's successful completion of Defendant's imposed PIP.

53.

In response to Plaintiff's email, Kristin Shute and Christina Davis of Google Human Resources held a video conference with Plaintiff on July 21, 2009 wherein Plaintiff was informed that his case was closed. The meeting was abruptly ended by Ms. Shute and Ms. Davis, and a confirmation email was sent by Google Human Resources recapping the video conference, reconfirming that Plaintiff's case was closed, and denying Plaintiff's request for a manager transition plan.

54.

Following this final complaint to Defendant's Human Resources Department concerning Plaintiff's concerns of discrimination on the basis of gender and religion, James was terminated from employment with Defendant on July 21, 2009 at approximately 7:00 p.m.—merely days after Plaintiff lodged his complaint with Human Resources.

**COUNT I**

**RELIGIOUS DISCRIMINATION IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

55.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 54 of this Complaint.

- 16 -

56.

Plaintiff is and at all times relevant hereto was a practicing Wiccan.

57.

The Wicca religion is a nature based religion and is a contemplated and protected religion under Title VII of the Civil Rights Act.

58.

Plaintiff was continuously subjected to inappropriate comments with regard to his practice of the Wicca religion.

59.

Based on the foregoing actions of Defendant and its employees, Plaintiff was subjected to a steady discourse of comments and "jokes" regarding witches, witchcraft, and witch trials.

60.

Such conduct by the Defendant and its employees was unwelcome and offensive, and permeated every aspect of Plaintiff's employment with the Defendant.

61.

Despite repeated attempts by the Plaintiff to report the conduct of the Defendant's employees to Human Resources, Defendant did not take any action to

rectify the situation—this despite three (3) separate formal complaints to Google Human Resources and requests to the perpetrator to discontinue such comments.

62.

In an attempt to prevent the continuous religious discrimination from escalating as the result of Plaintiff's religion, Plaintiff made numerous attempts to report the conduct to Defendant's human resources department, to no avail.

63.

The terms, conditions, and privileges of Plaintiff's employment were drastically different than other employees in the office. Plaintiff was subjected to increased participation at the data center, a requirement of written reports following visits to the data center, mandatory work hours, and a strict no work from home policy.

64.

Other Google employees were not subject to the same limitations in the terms, conditions, or privileges of employment with the Defendant.

65.

Although Defendant had previously conducted training sessions across the globe, after filing his complaint with Human Resources, such opportunities were withdrawn from Plaintiff's employment responsibilities.

66.

Other Google employees did not have such opportunities withdrawn from their employment responsibilities.

67.

Such continuous discriminatory actions and verbal comments by the Defendant and its employees based on the religion of the Plaintiff is in direct violation of Title VII of the Civil Rights Act.

68.

Such religious discrimination is in violation of Title VII, and comes with a concomitant requirement that Defendant pay Plaintiff's attorneys' fees.

## COUNT II

## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

69.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 68 of this Complaint.

70.

Plaintiff is a male, a class protected from employment discrimination by Title VII of the Civil Rights Act.

71.

Based on the foregoing actions of Defendant and its employees, Plaintiff was subjected to a steady discourse of differential treatment that other similarly situated female employees were not subjected.

72.

Such conduct by the Defendant and its employees was unwelcome and offensive, and permeated every aspect of Plaintiff's employment with the Defendant.

73.

Despite repeated attempts by the Plaintiff to resolve the differential treatment he was experiencing, Defendant did not take any action to rectify the situation—this despite three (3) separate formal complaints to Google Human Resources.

74.

In an attempt to prevent the continuous differential treatment from escalating as the result of Plaintiff's gender, Plaintiff made numerous attempts to report the conduct to Defendant's human resources department, to no avail.

75.

The terms, conditions, and privileges of Plaintiff's employment were drastically different than other female employees in the office. Plaintiff was subjected to increased participation at the data center, a requirement of written reports following visits to the data center, mandatory work hours, and a strict no work from home policy.

76.

Other female Google employees were not subject to the same limitations in the terms, conditions, or privileges of employment with the Defendant.

77.

Although Plaintiff had previously conducted training sessions across the globe, after filing his complaint with Human Resources, such opportunities were withdrawn from Plaintiff's employment responsibilities.

78.

Other female Google employees did not have such opportunities withdrawn from their employment responsibilities.

79.

Such continuous differential treatment by the Defendant and its employees based on the sex of the Plaintiff is in direct violation of Title VII of the Civil Rights Act.

## COUNT III

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

80.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 79 of this Complaint.

81.

Based on the foregoing actions of Defendant and its employees, Plaintiff felt as though he was being treated differently on the basis of his gender and religion.

82.

In response to the conduct and actions of the Defendant and its employees, Plaintiff made upwards to three (3) complaints to Google Human Resources.

83.

Plaintiff participated in meetings with human resources to address his concerns about Defendant and its employees with regard to his gender and religion.

84.

Additionally, Plaintiff requested accommodation, in the form of a manager transition plan, in attempt to remove himself from a situation where his direct supervisor continuously made derogatory comments to the Plaintiff based on his religion, as well as the imposition of special circumstances on his employment on the basis of his gender.

85.

As a result of Plaintiff's involvement in activity protected by Title VII, e.g., complaints to Defendant's human resources department, as well as participation in meetings with human resources to address Plaintiff's complaints and request a manager transition plan accommodation, a PIP was developed; and ultimately, Plaintiff was terminated from employment.

86.

As a result of Plaintiff's complaints to Human Resources regarding the conduct of the Defendant, the terms, conditions, and privileges of Plaintiff's employment were drastically different than other employees in the office. Plaintiff was subjected to increased participation at the data center, a requirement of written

reports following visits to the data center, mandatory work hours, and a strict no work from home policy.

87.

Other Google employees were not subject to the same limitations in the terms, conditions, or privileges of employment with the Defendant.

88.

Although Plaintiff had previously conducted training sessions across the globe, after filing his complaint with Human Resources, such opportunities were withdrawn from Plaintiff's employment responsibilities.

89.

Other Google employees did not have such opportunities withdrawn from their employment responsibilities.

90.

Such adverse action of retaliation by the Defendant and its employees against a covered individual for engaging in a protected activity is in direct violation of Title VII of the Civil Rights Act.

## COUNT IV

## PUNITIVE DAMAGES

### 91.

Plaintiff adopts and incorporates, as if set forth herein verbatim, his responses to Paragraphs 1 through 90 of this Complaint.

### 92.

By and through the actions of Defendant and its agents, Defendant's conduct in discriminating and retaliating against the Plaintiff was sufficiently malicious and recklessly indifferent so as to warrant an award of punitive damages under Title VII of the Civil Rights Act.

### 93.

By reason of the foregoing, Defendant is liable to the Plaintiff for punitive damages, in an amount as determined by the enlightened conscience of a fair and impartial jury.

## COUNT V

## ATTORNEYS' FEES

### 94.

Plaintiff adopts and incorporates, as if set forth herein verbatim, her responses to Paragraphs 1 through 93 of this Complaint.

95.

Defendants' conduct at all time and at all stages of Plaintiff's employment with it, and at all times since, as well as its stubborn litigiousness warrants an award of attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter the following in its favor:

(a)     that Plaintiff have a trial by jury as to all issues so triable;

(b)     that service of process be issued against the Defendant;

(c)     that Plaintiff be awarded actual, general, and punitive damages as contemplated by the Civil Rights Act of 1964;

(d)     that Plaintiff be awarded attorneys' fees for all counts for Defendants acts in violation of Title VII of the Civil Rights Act of 1964;

(e)     that double, treble, or any other applicable statutory damages be awarded;

(f)     that all costs of this action be taxed against Defendants; and

(g)     that Plaintiff be granted such other and further relief within this Court's plenary and actual powers.

Respectfully submitted this 29th day of OCTOBER, 2009.

**LANDRUM & FRIDUSS, LLC**

8681 Highway 92

Suite 400

Woodstock, Georgia 30189

(678) 384-3012; Fax: (678) 384-3017

E-mail: pfriduss@landrumfriduss.com

        cvanberkum@landrumfriduss.com

PHILLIP E. FRIDUSS

Georgia Bar No. 277220

CHRISTINE K. VAN BERKUM

Georgia Bar No. 162820

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JAMES BARA            )
                          )
     Plaintiff,         )
                          )     Civil Action
v.                       )     File No.: _____
                          )
GOOGLE, INC.,       )
                          )
     Defendant.      )

## CERTIFICATE REGARDING FONT SIZE

I hereby certify that the ***Complaint for Damages*** uses Times New Roman,

14 point, as approved by the Northern District of Georgia in Local Rule 5.1(C).

Respectfully submitted this 29th day of OCTOBER, 2009.

**LANDRUM & FRIDUSS, LLC**

8681 Highway 92           PHILLIP E. FRIDUSS
Suite 400                    Georgia Bar No. 277220
Woodstock, Georgia 30189    CHRISTINE K. VAN BERKUM
(678) 384-3012; Fax: (678) 384-3017   Georgia Bar No. 162820
E-mail: pfriduss@landrumfriduss.com   Attorneys for Plaintiff
        cvanberkum@landrumfriduss.com